UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

KEITH W. ANTHONY,             :
                                        :
            Plaintiff,        :
                                          :
            v.            :    No. 5:14-cv-05554
                                          :
RICHARD SELTZER, RYAN ALLES,     :
CITY OF ALLENTOWN, MEHMET BARZEV,  :
and MATTHEW BRETT,          :
                                          :
            Defendants.     :

_____

**<ins>MEMORANDUM</ins>**
**Alles's Motion to Dismiss, ECF No. 40- Denied**
**Seltzer and City of Allentown's Motion to Dismiss, ECF No. 41- Denied**
**Barzev, Brett, and City of Allentown's Motion to Dismiss, ECF No. 45- Denied in Part**

**Joseph F. Leeson, Jr.**                                    **September 30, 2016**
**United States District Judge**

## I.    INTRODUCTION

On November 1, 2013, Plaintiff had to pull off to the side of the road while driving

because he was experiencing car trouble.  After he crawled under his vehicle to inspect for

damage, Plaintiff alleges that he began to experience a seizure.  A bystander called 911, and

police and Emergency Medical Services ("EMS") responded.  Unfortunately, the Emergency

Medical Technicians ("EMT") were unable to render aid due to his involuntary convulsions.

Officer Seltzer decided to use his Taser on Plaintiff in order to handcuff him.  Plaintiff was

thereafter tased at least a dozen more times before arriving at the hospital.  A second Officer,

Alles, also used his Taser, and the EMTs, Barzev and Brett, directed the Officers to tase Plaintiff

after he had been handcuffed.  Plaintiff was even tased after he had been loaded into the

ambulance and strapped to the litter.  Plaintiff had to be hospitalized as a result of the tasing with contusions, burns, and lacerations throughout his body.  Plaintiff filed the instant action against the Officers and EMTs for excessive use of force, and against the City of Allentown for failing to properly train its employees in the use of Tasers.  All Defendants have filed Motions to Dismiss Plaintiff's Amended Complaint.  For the reasons set forth herein, at this early stage of the case, the Court denies the requests to dismiss the excessive force claims against Alles, Seltzer, Barzev, and Brett, as well as their qualified immunity defenses.  The request to dismiss the *Monell*[1] claim against the City of Allentown with respect to the Officers is also denied, but is granted with respect to the EMTs.

## II.    BACKGROUND

On September 26, 2014, Plaintiff Keith W. Anthony filed a Complaint against Allentown Police Officers Richard Seltzer, Ryan Alles, and the City of Allentown.  Compl., ECF No. 1. Plaintiff alleged that on November 1, 2013, Seltzer and Alles used excessive force by tasering him fourteen times while he was receiving medical treatment from EMS in violation of the Fourth and Fourteenth Amendments.  Compl. ¶¶ 5, 18-27.  The Complaint also asserted a *Monell* claim against the City of Allentown for allegedly providing inadequate training as to the use of Tasers.  *Id.* ¶¶ 28-36.

On November 25, 2014, Defendants filed a Motion to Dismiss for failure to state a claim and qualified immunity.  ECF No. 7.  In an Order dated September 21, 2015, this Court concluded that "Plaintiff's Complaint is short on facts that would enable the Court to adequately assess Defendants' claim to immunity and is internally inconsistent with respect to the facts that

---

[1]    *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a municipality may be sued under 42 U.S.C. § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

it does contain." Order 2, ECF No. 32 (explaining that "[o]ther than the allegation in paragraph 12, Plaintiff's Complaint is silent on the question of whether, and to what extent, Defendants were acting at the direction of emergency medical personnel when they deployed their Tasers"). Accordingly, the Court directed Plaintiff to file an Amended Complaint. *Id.* (citing *Albani v. United States*, No. 09-4790, 2010 WL 2364426, at *12 (E.D. Pa. June 9, 2010) (permitting a plaintiff to amend his complaint to enable the court to assess whether defendants were entitled to qualified immunity)).

Plaintiff filed an Amended Complaint on October 2, 2015, adding as Defendants EMS personnel Mehmet Barzev and Matthew Brett.  Am. Compl., ECF No. 33.  Plaintiff alleges that he stopped on the shoulder of the road because he was having car trouble.  *Id.* ¶¶ 11-12.  Plaintiff alleges that he crawled under his vehicle to inspect for causes of a radiator leak when he began to experience a seizure.  *Id.* ¶¶ 14-15.  A bystander called 911 and reported the emergency, specifically stating that he believed Plaintiff was experiencing a seizure.  *Id.* ¶¶ 17-18.  Plaintiff's Amended Complaint alleges that "there was no suggestion that Plaintiff was involved in criminal misconduct."  *Id.* ¶ 18.  Police and EMS responded.  *Id.* ¶¶ 19-20.

Barzev and Brett attempted to administer medical care but were unable due to Plaintiff's involuntary convulsions.  *Id.* ¶ 21.  Plaintiff alleges that according to Seltzer's Incident Report dated November 1, 2013, Seltzer "unilaterally made the decision to use a taser on Plaintiff" in order to handcuff him.  *Id.* ¶¶ 22-24 (applying the Taser in "drive stun" mode).  Seltzer reported that after this initial tase and application of handcuffs, medical personnel asked Seltzer or Alles "to tase Plaintiff one additional time."  *Id.* 27.  However, Plaintiff also alleges that if the account by Seltzer is accurate, "Barzev and Brett, physically abused [him] by requesting Defendants Seltzer and Alles to taser Plaintiff over numerous parts of his body."  *Id.* ¶ 46.  After Plaintiff

3

was loaded into the ambulance and strapped down to the litter, Seltzer and Alles continued to tase him. *Id.* ¶ 30.  Plaintiff asserts that requesting police officers to tase a patient in medical distress violates the protocol and standards applicable to EMTs. *Id.* ¶ 45.

Medical records indicate that Plaintiff was tased "in excess of a dozen times." *Id.* ¶ 26. Plaintiff asserts that he was hospitalized as a result of the tasing and suffered contusions, burns, and lacerations throughout his body. *Id.* ¶¶ 38, 51.  He claims that his psychological injuries and physical scarring are permanent. *Id.* ¶¶ 40, 53.

Plaintiff claims that being tased more than a dozen times while in handcuffs, in medical distress, and refusing medical treatment constitutes the excessive use of force by Seltzer and Alles in violation of the Fourth, Eighth, and Fourteenth Amendments. *Id.* ¶¶ 33, 35.  The Amended Complaint also includes an excessive force claim against Barzev and Brett under the Fourth, Eighth, and Fourteenth Amendments based on their directions to Alles and Seltzer to tase Plaintiff over numerous parts of his body, while he was in medical distress and refusing medical treatment. *Id.* ¶¶ 45-46.  Plaintiff asserts a *Monell* claim against the City of Allentown based on the actions of Seltzer and Alles. *Id.* ¶¶ 56-61.  Plaintiff alleges that these officers had a history of physically abusing people and that the City of Allentown had a policy, practice, or custom of covering it up. *Id.* ¶ 57.  Plaintiff also asserts that the City of Allentown failed to properly train Seltzer and Alles in the use of a Taser on a person suffering a medical seizure, and failed to properly instruct them not to use a Taser on a person in handcuffs in the back of an ambulance. *Id.* ¶ 58.  Plaintiff alleges that the City of Allentown's policy, practice, or custom caused Plaintiff to be subjected to physical abuse by Alles and Seltzer. *Id.*  Finally, Plaintiff raises a *Monell* claim against the City of Allentown for failing to properly train EMS personnel about tasing

patients or allowing police officers to tase patients refusing medical care.  *Id.* ¶ 63.  Plaintiff alleges that the City's failure to train was the proximate cause of his injuries.  *Id.* ¶¶ 61, 67.

On November 13, 2015, Alles filed a Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 40.  Alles argues that the Taser "was reasonably deployed" to subdue Plaintiff and prevent him from injuring himself or others and, further, that "even if the Court determines the use of the Taser was not reasonable, there is no case law which would have provided [Alles] fair notice of the illegality of his actions, entitling him to qualified immunity."  Alles's Mem. Supp. Mot. Dismiss 4-5, ECF No. 40-2.

Seltzer and the City of Allentown filed a Motion to Dismiss on November 17, 2015, asserting that the Officers' use of force was not excessive, that Seltzer is entitled to qualified immunity, and that the Amended Complaint fails to state a *Monell* claim against the City of Allentown.  ECF No. 41. Seltzer argues that a Taser does not ordinarily cause death or serious bodily injury and that its application here, which was done because the Officers believed they needed to control Plaintiff in order for the EMTs to render medical care, was reasonable. Seltzer's Mem. Supp. Mot. Dismiss 5-6, ECF No. 41. Seltzer also contends that he is entitled to qualified immunity because there is no Third Circuit case that would have put the officers on notice that their actions would violate Plaintiff's constitutional rights.  *Id.* at 8-9 (citing *Luepker v. Taylor*, No. 4:09CV1657-DJS, 2010 U.S. Dist. LEXIS 66897 (E.D. Mo. July 6, 2010)).  The City of Allentown asserts that a *Monell* claim is dependent on an underlying constitutional violation, which Plaintiff has failed to state.  Seltzer's Mem. Support Mot. Dismiss 11.  Also, it contends that Plaintiff's theory that alternative training on the use of Tasers is deficient because the Officers' actions helped Plaintiff receive medical attention.  *Id.*

On November 30, 2015, Barzev, Brett, and the City of Allentown filed a Motion to Dismiss. ECF No. 45.  Defendants argue that because Plaintiff is not a sentenced prisoner, he cannot state a claim under the Eighth Amendment, and that the excessive force claim must be raised under the Fourth Amendment.  Barvez's Mem. Support Mot. Dismiss 5, ECF No. 45. They also assert that because there is no right to competent emergency medical services, Plaintiff cannot state a claim under the Fourteenth Amendment.  *Id.* at 5-6 (citing *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 478 (3d Cir. 2003).  Next, Defendants argue that the use of force was not excessive because they only requested the Officers to use their Tasers to control Plaintiff long enough to administer emergency medical treatment.  *Id.* at 8.  Defendants contend that they are entitled to qualified immunity because Plaintiff cannot establish that they violated any clearly established right.  *Id.* at 9-11.  Finally, the City of Allentown asserts that the *Monell* claim should be dismissed because the actions of the EMTs helped Plaintiff receive medical care.  *Id.* at 11-13.

On December 10, 2015, Plaintiff filed a single brief in opposition addressing all three motions to dismiss.  ECF No. 47.  Plaintiff contends that because the facts are in dispute, qualified immunity cannot be decided by the Court and must go to the jury.  Pl.'s Mem. Opp. Mot. Dismiss 5, ECF No. 47.  Plaintiff also asserts that there was no probable cause to arrest.  *Id.* at 6.  Next, Plaintiff argues that the right to bodily integrity was clearly established and, regardless, that police officers can be on notice that their conduct violates established law under the obvious clarity doctrine, which he submits applies to the facts here.  *Id.* at 7-11.  Plaintiff further argues that there is substantial precedent that tasing someone in handcuffs is excessive force and that because the EMTs were not trained in the use of Tasers, the Officers cannot escape liability by claiming they were only following directions.  *Id.* at 11-13 (citing cases).  Lastly,

Plaintiff argues that the excessive force claims have been adequately pled, which is Defendants' only basis to dismiss the *Monell* claims.  *Id.* at 12-13.

Reply briefs were subsequently filed by Alles and by Barzev, Brett, and the City of Allentown.  ECF Nos. 48-49.

## III.    STANDARD OF REVIEW

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* at 678.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  *Id.*; *Phillips*, 515 F.3d at 233 (quoting *Twombly*, 550 U.S. at 563 n.8).  Second, the court must determine whether the complaint "states a plausible claim for relief, . . . [which is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 678.  Only if "the '[f]actual allegations . . .

7

raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.

*Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555).  The defendant bears the burden of

demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.

*Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v.

Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

**IV.     ANALYSIS**

> **A.     Plaintiff's excessive force claims are properly raised under the Fourth Amendment.**

In the two excessive force counts, Plaintiff claims that the individual Defendants used, or

directed the use of, excessive force against him in violation of the Fourth, Eighth, and Fourteenth

Amendments, and that such force violated his constitutional right to bodily integrity under the

Fourth and Fourteenth Amendments.

To the extent Plaintiff relies on the Eighth Amendment to support his excessive force

claims, this theory of liability is dismissed because the Eighth Amendment only applies to

convicted prisoners.  *See Graham v. Connor*, 490 U.S. 386, 398 (1989) (holding that "the less

protective Eighth Amendment standard [prohibiting cruel and unusual punishment] applies 'only

after the State has complied with the constitutional guarantees traditionally associated with

criminal prosecutions'" (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977))).

Additionally, Plaintiff's substantive due process claim based on the Fourteenth

Amendment's right to bodily integrity is dismissed because the Fourth Amendment governs

these claims.  *See Graham*, 490 U.S. at 395 (holding that "all claims that law enforcement

officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory

stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

'reasonableness' standard, rather than under a 'substantive due process' approach"); *Reiff v.*

*Marks*, No. 08-CV-05963, 2009 U.S. Dist. LEXIS 60562, at *7 (E.D. Pa. July 15, 2009)

(dismissing the plaintiff's counts under the Fourteenth Amendment because they attempted to

state separate and independent causes of action from those excessive force claims that had been

properly alleged under the Fourth Amendment).

Therefore, Counts One and Two, asserting the excessive use of force, may proceed only

under the Fourth Amendment.

**B.      Plaintiff has stated a claim against all individual Defendants for the excessive use of force.**

In *Graham*, "the Supreme Court held that the use of force contravenes the Fourth

Amendment if it is excessive under objective standards of reasonableness." *Bennett v. Murphy*,

274 F.3d 133, 136 (3d Cir. 2001) (citing *Graham*, 490 U.S. 386).  "To state a claim for excessive

force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a

'seizure' occurred and that it was unreasonable."  *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir.

1999).  "A 'seizure' triggering the Fourth Amendment's protections occurs only when

government actors have, 'by means of physical force or show of authority, . . . in some way

restrained the liberty of a citizen.'"  *Graham*, 490 U.S. at 395 (quoting *Terry v. Ohio*, 392 U.S. 1,

19, n.16 (1968)); *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (holding that "[t]he use of

excessive force is itself an unlawful 'seizure' under the Fourth Amendment").  To survive a

motion to dismiss, the plaintiff must allege "that each defendant: (1) directly used excessive

force; (2) directed others to use excessive force; or (3) were the people in charge of plaintiff's

[custody] and acquiesced as their subordinates used excessive force."  *Ynfante v. United States*,

No. 3:13cv767, 2015 U.S. Dist. LEXIS 17234, at *19 n.10 (M.D. Pa. Feb. 12, 2015).

Here, Plaintiff was seized once he was handcuffed.  *See Brower v. County of Inyo*, 489 U.S. 593, 599 (1989) ("We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result.").

This Court must therefore consider whether the force applied was reasonable.  According to the Amended Complaint, Officers Alles and Seltzer encountered Plaintiff when they responded to a medical distress call, which had no suggestion of criminal activity.  While EMTs Barzev and Brett attempted to render aid, Seltzer tased Plaintiff in order to handcuff him.  After he was handcuffed, and more than once at the request of Barzev and Brett,[2] Alles and Seltzer continued to employ their Tasers.  Even after Plaintiff was loaded into the ambulance and strapped down to the litter, Seltzer and Alles continued to tase him.  Plaintiff was tased more than a dozen times and was hospitalized as a result of his injuries from the tasing.

These allegations state a claim for the excessive use of force by Alles, Seltzer, Barzev, and Brett.  *See Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) ("The repeated use of the taser against a subdued offender is clearly unreasonable and constitutes excessive force under the Fourth Amendment."); *Geist v. Ammary*, 40 F. Supp. 3d 467, 481 (E.D. Pa. 2014) ("The use of a Taser on a suspect who is no longer resisting arrest has been found to be unconstitutional."); *Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731 (E.D. Pa. 2014) (concluding that the plaintiff

---

[2]     Although the Amended Complaint contains seemingly inconsistent allegations as to the number of times Barzev and Brett requested Alles and Seltzer to employ their Tasers, *compare* Am. Compl. ¶ 27 (alleging that Seltzer wrote in his report that "after the initial tasing and handcuffing, they were asked by the Defendants, Barzev and Brett to tase Plaintiff one additional time"), *with id.* at ¶ 46 (alleging that according to the account by Seltzer, "Defendants, Barzev and Brett, physically abused Plaintiff by requesting Defendants Seltzer and Alles to taser Plaintiff over numerous parts of his body"), Plaintiff explains that he has no direct knowledge of these facts, *see id.* ¶ 28, presumably because he was experiencing a seizure at the time of the incident.  Regardless, Rule 8(a)(2) "permits inconsistency in both legal and factual allegations." *Indep. Enters. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997) (citing Fed. R. Civ. P. 8(e)(2)).

had sufficiently alleged a claim of excessive force where he was tased in the stomach for resisting police and refusing to sit in the back of the police car after being arrested); *Garey v. Borough of Quakertown*, No. 12-799, 2012 U.S. Dist. LEXIS 117059, at *12 (E.D. Pa. Aug. 20, 2012) (refusing to dismiss the complaint, which alleged that the plaintiff was "tased without provocation when he had already been handcuffed and was inside a police vehicle").

"It is well-settled that in deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record." *Beverly Enters. v. Trump*, 182 F.3d 183, 190 (3d Cir. 1999). Although Alles and Seltzer assert in their briefs in support of the motions to dismiss that they only applied force in an attempt to prevent injury and help Plaintiff,[3] these facts are absent from the Amended Complaint. Similarly, the arguments of Barzev and Brett that they asked for the assistance of Alles and Seltzer to allow them to administer medical care to Plaintiff are not in the pleadings. "[A]t this stage of the case, the Court is bound to accept as true the facts alleged in the complaint and cannot make credibility assessments between Plaintiff's allegations and the Officers' purported reasons for restraining Plaintiff in deciding the present the motion to dismiss." *Castro v. Del. River Port Auth.*, No. 13-4467, 2014 U.S. Dist. LEXIS 86956, at *33 (D.N.J. June 26, 2014). "Courts in our district have repeatedly refused to find the use of a Taser on a handcuffed arrestee to be reasonable at the motion to dismiss stage." *Boyden*, 5 F. Supp. 3d at 739.

Accordingly, the motions to dismiss the excessive force claims are denied.

---

[3]     An officer's use of a Taser to control an individual in order for him to receive medical attention may be reasonable under the Fourth Amendment. *See Shultz v. Carlisle Police Dept.*, 706 F. Supp. 2d 613, 616-17 (M.D. Pa. 2010) (concluding, on summary judgment, that a jury could find that the defendant's decision to deploy a Taser six times on an individual who had just suffered a seizure in order to handcuff him and place him on a gurney to be transported to the hospital, was reasonable).

**C.      The qualified immunity defenses are denied without prejudice to reassert after the completion of discovery.**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  A court must consider, first, whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223.  "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*  "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.*

Considering only the facts alleged in the Amended Complaint, no officer could reasonably believe that it was lawful to tase a handcuffed patient, who at some point during the tasing had been loaded into an ambulance and strapped down to the litter, more than a dozen times.  Similarly, no emergency medical responder could reasonably believe that it was lawful to direct police officers to tase a handcuffed patient over numerous parts of his body.  Therefore, qualified immunity is denied without prejudice. *See Dix v. City of Philadelphia*, No. 15-532, 2015 U.S. Dist. LEXIS 101457, at *17-19 (E.D. Pa. July 31, 2015) (denying the qualified immunity defense without prejudice to reassert after the completion of discovery); *Garey*, 2012 U.S. Dist. LEXIS 117059, at *12 (holding that "in the absence of a clear record of what actually

occurred in the course of Plaintiff's arrest, the Court must deny the request for dismissal on the

basis of qualified immunity at this time").

    **D.**    ***Monell* claims**

"[A] municipality can be found liable under § 1983 only where the municipality itself

causes the constitutional violation at issue. Respondeat superior or vicarious liability will not

attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436

U.S. at 694-95). "[I]t is when execution of a government's policy[4] or custom,[5] whether made

by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436

U.S. at 694.

Failing to train municipal employees can be a source of liability, but "[o]nly where a

municipality's failure to train its employees in a relevant respect evidences a 'deliberate

indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a

city 'policy or custom' that is actionable under § 1983." *City of Canton*, 489 U.S. at 388, 390.

"[I]t may happen that in light of the duties assigned to specific officers or employees the need for

more or different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights, that the policymakers of the city can reasonably be said to have been

deliberately indifferent to the need." *Id.* "In that event, the failure to provide proper training

may fairly be said to represent a policy for which the city is responsible, and for which the city

may be held liable if it actually causes injury." *Id.* A three-part test has been formulated to

---

[4]     "A municipal policy, for purposes of Section 1983, is a statement, ordinance, regulation, or decision officially adopted and promulgated by a government body's officers." *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *10-11 (E.D. Pa. June 30, 2008) (citing *Monell*, 436 U.S. at 690).

[5]     A custom, although not authorized by written law, has the force of law because it is such a permanent and well-settled practice. *Monell*, 436 U.S. at 690.

determine whether a municipality's failure to train or supervise amounts to deliberate indifference. *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999). "[I]t must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*; *see also Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (creating a four-part test for supervisory liability).

       **1.**      **The motion to dismiss the *Monell* claim against the City of Allentown in Count Three, relating to Officers Alles and Seltzer, is denied.**

A municipality may be liable under *Monell* for providing a Taser to a rogue officer or for failing to adequately train its officers on the safe use of a Taser. *See Geist v. Ammary*, No. 11-07532, 2012 U.S. Dist. LEXIS 179983 (E.D. Pa. Dec. 20, 2012) (refusing to dismiss a *Monell* claim against the City of Allentown). In *Geist*, the court concluded that the complaint, which alleged that the City of Allentown gave Officer Ammary a Taser, "despite actual notice that [] Ammary was not a candidate for using a taser [sic] because of his propensity to use excessive force against the public," that the City "had a policy, practice, regulation or custom of giving minimal training about the usage of the taser [sic]," that the policy, practice, regulation or custom caused Plaintiff to be subject to arrest and abuse by Officer Ammary, and that the City of Allentown "failed to use adequate training before issuing a taser [sic] to [Officer] Ammary," was sufficient to state a *Monell* claim. *Id.* at *29; *see also* 40 F. Supp. 3d 467 (E.D. Pa. 2014) (denying the City of Allentown's motion for summary judgment). *See also Garey*, 2012 U.S. Dist. LEXIS 117059, at *17-18 (denying the motion to dismiss the *Monell* claim against the borough for failing to train the officer-defendants "in how to properly place a prisoner in custody in a police car without resorting to use of a Taser when that suspect is already handcuffed, in a

police car, and poses no physical threat" because the complaint also alleged that officers in the borough had a history of police brutality toward citizens in similar circumstances, and had "permitted, tolerated, and negligently overlooked the inappropriate use of Tasers by its officers and failed to train them in the proper use of Tasers on arrestees"); *Reiff*, 2009 U.S. Dist. LEXIS 60562, at *16 (refusing to dismiss the *Monell* claim where the plaintiff identified a training deficiency: whether the municipality failed to educate, instruct, or otherwise train its police officers with respect to the proper use of Tasers but nonetheless supplied officers with such weapons, and pled causation: that the plaintiff's injuries were proximately caused by a custom, practice, and policy of the municipality to employ Tasers without regard to the health, safety, and welfare of those upon whom they are used).

Plaintiff alleges that Officers Alles and Seltzer had a history of physically abusing people, that the City of Allentown had a policy, practice, or custom of covering up these Officers' abuse of authority, that the City failed to properly train Alles and Seltzer in the use of a Taser on a person experiencing a medical seizure, that the City failed to properly train them not to use a Taser on a person in handcuffs in the back of an ambulance, and that the City's policy, practice, or custom caused Plaintiff to be subjected to physical abuse by Alles and Seltzer.

These allegations show that the City of Allentown had a policy, practice, regulation, or custom of covering-up for Alles and Seltzer when they abused their authority as police officers and/or physically abused people, and yet knowingly decided to supply these Officers with potentially deadly weapons and allowed them to respond to emergency calls unsupervised and without adequate training.  Plaintiff has also shown that his injuries were proximately caused by the policy, custom, or practice of the City of Allentown.  Consequently, the motion to dismiss the *Monell* claim at Count Three is denied.

**2.     The motion to dismiss the *Monell* claim against the City of Allentown in Count Four, based on the failure to train Barzev and Brett on tasing patients, is granted.**

"The City's alleged failure to train its EMS personnel adequately will constitute a custom or policy actionable under § 1983 'only where the failure to train amounts to deliberate indifference to the rights of persons with whom' they come in contact." *Nelson v. City of Allentown*, No. 98-2290, 1999 U.S. Dist. LEXIS 15224, at *8 (E.D. Pa. Sept. 28, 1999) (citing *City of Canton*, 489 U.S. at 388).  A single, isolated incident is not enough to hold a city liable. *Id.* at *12 ("Well-trained paramedics, however, 'occasionally make mistakes,' a fact which 'says little about the training program or the legal basis for holding the city liable.'").  *Cf. Aguilera v. County of Nassau*, 453 F. Supp. 2d 601, 609 (E.D.N.Y. 2006) (determining that where the plaintiff alleged that the County had "received numerous complaints regarding its officers' failure to provide immediate emergency medical attention to suspects in custody, but that information regarding the nature of those complaints is within the sole possession of Nassau County," the case should proceed to discovery).

Plaintiff alleges that the City of Allentown had a policy, practice, regulation, or custom of failing to train EMS personnel about tasing patients or using police officers to tase patients refusing medical care, and that this was the proximate cause of his injuries on November 1, 2013.  However, Plaintiff does not allege that either Barzev or Brett had a history of abusing their positions or their patients.  There are also no allegations that Barzev or Brett, or any other EMS personnel, had ever used, or directed the use of, a Taser on a patient.  The City of Allentown did not supply these Defendants with Tasers, nor are there any allegations that the City of Allentown knew EMTs would encounter a situation similar to the one faced here.

Consequently, Plaintiff has failed to state a *Monell* claim against the City of Allentown in Count Four, and Count Four is dismissed with prejudice.[6]

## V.    CONCLUSION

In ruling on a Motion to Dismiss, the Court is required, at this early stage of the case, to accept all of Plaintiff's factual allegations set forth in the Amended Complaint as true.  Whether or not the discovery information disclosed later on in the case supports Plaintiff's allegations remains yet to be seen.

At this early stage of the case, Plaintiff has sufficiently alleged in Plaintiff's Amended Complaint excessive force claims, cognizable only under the Fourth Amendment, against Alles, Seltzer, Barzev, and Brett, and the requests to dismiss these claims are denied.  Based on the facts alleged in the Amended Complaint, no police officer or EMT could reasonably believe that it was lawful to tase a handcuffed medical patient, who was not suspected of criminal activity, more than a dozen times.  The qualified immunity defenses are therefore denied without prejudice, but may be reasserted after the completion of discovery.  Plaintiff's *Monell* claim against the City of Allentown for, inter alia, covering-up the violent histories of Officers Seltzer and Alles and failing to properly train them in the use of Tasers is denied.  But, Plaintiff has failed to state a *Monell* claim against the City of Allentown for failing to train the EMTs on Taser safety and this claim is dismissed with prejudice.

---

[6]    Plaintiff has not sought leave to file a second amended complaint in the event the motions to dismiss are granted, nor has he alluded to any facts that would cure the deficiencies identified in this opinion.  Moreover, Plaintiff was previously afforded an opportunity to file an amended complaint after Defendants filed a motion to dismiss the original Complaint.  *See* Order, ECF No. 32 (commenting that the original "Complaint is short on facts" and "contradicts itself").  Accordingly, Plaintiff was given an adequate opportunity to state all of his claims and further leave to amend is denied.  *See Klein v. Autek Corp.*, 147 F. App'x 270, 278 (3d Cir. 2005) (finding "no error in the District Court's decision to deny the Plaintiffs leave to amend their complaint for a second time").

A separate Order follows.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge